OPINION OF THE COURT
Frank S. Rossetti, J.
This proceeding involves layoffs resulting from the State’s current fiscal crisis. By letters dated September 5, 1991, the petitioners and two other Associate Court Clerks (grade JG-23) employed at the Westchester County Supreme Court in White Plains were notified that their positions were being abolished and they were being displaced to Court Clerk positions (JG-18), effective September 26, 1991. State-wide 471 nonjudicial positions in the State’s Unified Court System were eliminated at roughly the same time and of these 24 were in the Ninth Judicial District where the Westchester Supreme Court is located. The noted displacement of petitioners resulted in lower pay, changed work responsibilities and, in some cases, relocation.
In the State Court Clerk job series, there are four grades or titles: (1) Principal Court Clerk (JG-28); (2) Associate Court *134 Clerk (JG-23); (3) Senior Court Clerk (JG-21); and (4) Court Clerk (JG-18). At the time of the subject job abolitions, there were 15 Associate Court Clerks, 29 Senior Court Clerks and 35 Court Clerks in the Ninth District. It is petitioners’ claim that they should not have been displaced down two grades to Court Clerk, but rather only one grade to Senior Court Clerk. They contend the State’s action violated the Civil Service Law and Rules, the court’s own rules and the general Federal Civil Rights Law (i.e., 42 USC § 1983). Alternatively, they contend the State’s abolition of their jobs was disproportionate and arbitrary and the Anderson petitioners claim such was also constitutionally infirm. They conclude under this alternative contention that they should be restored to their Associate Court Clerk positions. Finally, petitioners ask for attorneys’ fees for said civil rights violations under Federal law (i.e., 42 USC § 1988; see also, CPLR art 86; cf., CPLR 8601 [b]).
Dealing first with petitioners’ contention that they should have been displaced down only one grade, the relevant part of Civil Service Law § 80 (7) provides: "A permanent incumbent of a position in the state service in a specific title to which there is a direct line of promotion who is suspended or displaced pursuant to this section, together with all other such incumbents suspended or displaced at the same time, shall displace, in the inverse order of the order of suspension or demotion prescribed in subdivisions one and two of this section, incumbents serving in positions in the same layoff unit in the next lower occupied title in direct line of promotion who shall be displaced in the order of suspension or demotion prescribed in subdivisions one and two of this section; provided, however, that no incumbent shall displace any other incumbent having greater retention standing.” Section 5.5 (a) (3) of the Rules of the Classified Service (4 NYCRR) defines "fnjext lower occupied title” to "mean the title in direct line of promotion immediately below the title from which the incumbent is suspended or demoted”. The Office of Court Administration (O.C.A.) attempts to justify its deviation from the above statutory direction by arguing that since the Senior Court Clerk position and the Court Clerk position both promote directly into the Associate Court Clerk title (i.e., one of the qualifications for that latter title is prior service in either the Senior Court Clerk or Court Clerk positions, as well as such Surrogate’s Court positions — see, infra, at 138), they both are in direct line of promotion and therefore may be lumped together for purposes of displacement. Based on this dubious *135 reasoning, O.C.A. pooled the two titles where, by a fortuitous coincidence, there were seven Court Clerks with only probationary or contingent permanent status. By court rule these temporary jobholders are to be demoted before permanent incumbents (see, Rules of Chief Judge [22 NYCRR] § 25.30 [a] [1]; see also, Civil Service Law § 80 [1]), so these seven were demoted and petitioners (and the two other abolished Associate Court Clerks) were displaced down to their Court Clerk positions.
O.C.A. does not dispute petitioners’ allegations that there were at least seven Senior Court Clerks with less seniority than the abolished Associate Court Clerks and an August 1991 O.C.A. computer summary shows many more.[1] (See, Civil Service Law § 80 [7].) No legal authority or historical precedent is cited for said conglomeration of separate titles and the claimed "unique” circumstance of both titles being present in the same Judicial District provides no logical basis for such jumbling of jobs O.C.A. otherwise considers separate. That both titles promote up to a common title does not logically or reasonably require that both be combined for downward displacement, especially since two different statutes cover each process (compare, Civil Service Law § 52, with § 80; see, Matter of Valdes v Krone, 28 AD2d 748, affd 21 NY2d 934). If this were all that was involved, further discussion would be unnecessary. However, O.C.A. contends that the consequences to all affected positions should be taken into account in interpreting the controlling law and rules.
O.C.A. argues that if there were no pooling of titles and the abolished Associate Court Clerks displaced Senior Court Clerks, the Senior Court Clerks would not in turn displace or bump Court Clerks because the latter are not "in direct line of promotion” to Senior Court Clerks (see, Civil Service Law § 80 [7]). Rather, the displaced Senior Court Clerks would only have the right to retreat to a previously held position (see, Civil Service Law § 80 [7]), which may or may not be that of Court Clerk. It contends this could result in unfairness because some Senior Court Clerks might have to retreat below Court Clerk while some temporary Court Clerks would be untouched. However, the O.C.A. respondents support this argument with only conclusory allegations and do not delin *136 eate the exact retreats involved. The employment records submitted of petitioners and other clerks indicate that it was common for Senior Court Clerks to have been promoted from Court Clerk (in fact only one such record showed otherwise, where a Court Clerk went directly to Associate Court Clerk). Thus it is not an improper inference that most or all of the temporary Clerk Clerks would be displaced by retreating Senior Court Clerks. Absent relevant and material proof (which O.C.A. could easily have presented), we deem its argument here essentially hypothetical and speculative.
In any event, as recently held in Pollock v Crosson (153 Misc 2d 419), there is no requirement that all temporary positions be eliminated before permanent ones are. Rather, displacement of temporary jobholders is to be on a title by title basis (see, supra) and hence there is no warrant for displacing temporaries in titles where there is no abolition or demotion. Thus the fact there were abolitions in the Associate Court Clerk title does not mean it was proper to simply and automatically demote temporaries in the Court Clerk title five grades and two job titles below. Of course, if said abolitions result in subsequent displacements or retreats which in turn call for demotions within said latter title pursuant to statute and regulations, then demotions of such temporaries are proper. However, that is not what O.C.A. did here. Rather, it inconsistently treated as one two titles it otherwise considers distinct and separate. We therefore do not find the rationale offered by O.C.A. to be adequate justification for its disregard of the clear statutory mandate (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 76; see also, § 94).
As intimated, subdivisions (1) and (7) of Civil Service Law § 80 provide that permanent incumbents whose positions are abolished displace less senior permanent employees in the next lower occupied title in direct line of promotion. O.C.A. places great emphasis on the direct line of promotion part of the statute, but in essence ignores the next lower title part (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98, 231). While the Senior Court Clerk and Court Clerk positions may both be in direct line of promotion to Associate Court Clerk, Senior Court Clerk is clearly the next lower title in terms of grade (i.e., JG-21 versus Court Clerk’s JG-18), pay and responsibility (Senior Court Clerks supervise Court Officers while Court Clerks have no such responsibility). Thus, by statute, Civil Service rules and court rules (Civil Service Law §80 [1], [7]; 4 NYCRR 5.5 [a] [3]; 22 NYCRR 25.30 [e]), *137 petitioners were entitled to displace Senior Court Clerks with less seniority.
As to the Senior Court Clerks displaced, it could be argued that since in fact Senior Court Clerks were typically promoted from Court Clerks, the phrase direct line of promotion should be liberally construed to include O.C.A.’s actual practices (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 127, 128 [a]; § 129 [a]; but see, § 128 [b]; § 129 [b]). However, as noted (see, supra, at 136), in at least one case a Court Clerk by-passed the Senior Court Clerk position and was promoted directly to Associate Court Clerk. It was not shown this was a special exception to an otherwise invariable practice and, while it may be very possible that the seven least senior Senior Court Clerks were promoted from Court Clerk (see, id.), the lack of sufficiently comprehensive proof of actual promotions precludes any finding of an established de facto O.C.A. practice. O.C.A.’s published guidelines are evidence of its contrary interpretation and the use of the phrase "direct line of promotion” indicates something more is intended than just a statistical history of one title usually promoting to another (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98, 231). We consequently do not find unreasonable O.C.A.’s interpretation that a position promote into a title according to the job description qualifications therefor in order to be considered in direct line of promotion thereto. Hence, according to this interpretation, the displaced Senior Court Clerks have no right of displacement since there is no lower title in direct line of promotion to them and they are therefore limited to retreating to previously held positions (see, Civil Service Law § 80 [7]). However, a precise specification of the retreats to be made by the Senior Court Clerks (and lower positions) was not requested by such respondents and thus is beyond the relief sought in this proceeding.[2] There is accordingly no proper predicate for this court to make findings beyond those relating to O.CA.’s treatment of petitioners.
As to the noted Gorman and Mayerhofer respondents *138 (see, n 2), they were added as parties in the amended Anderson petition, pursuant to the court’s opinion and order thereon.[3] In that decision this court expressly found that a lack of proof precluded any ultimate or conclusive determination as to the similarity of their Associate Surrogate’s Court Clerk positions to petitioners’ Associate Court Clerk titles, within the meaning of the relevant parts of Civil Service Law §80. Since that decision, said respondents and O.C.A. have submitted sufficient documentary evidence to show that the responsibilities of the two titles differ in significant respects, including those related to the specialized nature of the Surrogate’s Court. (See, Matter of Crow v Ambach, 96 AD2d 642; Matter of Piekielniak v Axelrod, 92 AD2d 968, 970, lv denied 59 NY2d 603.) We consequently do not find the Surrogate’s Court positions of these respondents similar to petitioners’ within the meaning of said section 80. Dismissal of said amended petition is therefore warranted as to them.
We further observe that the Anderson petitioners additionally argue that some Senior Court Clerks obtained their positions as the result of O.C.A. reallocation rather than by competitive examination (see, NY Const, art V, § 6; Civil Service Law § 52 [1], [2], [8]; Rules of Chief Judge [22 NYCRR] § 25.35 [a]). This occurred when State Court Officers were legislatively authorized for the appropriate Ninth Judicial District Courts (see, Judiciary Law § 39 [10], as amended by L 1983, ch 51, § 6) and Court Clerks were thereafter promoted to Senior Court Clerk to supervise them (see, supra, at 136). Whatever the legality of this reallocation,[4] said petitioners failed to show how this affected their demotion or displacement. First, the more senior Associate Court Clerks whose positions were not abolished at the subject time did not obtain that title from any such reallocation. Second, if any obtained a prior Senior Court Clerk position therefrom, they were still *139 qualified for the higher, Associate Court Clerk title on the basis of their normal competitive appointment to the Court Clerk position which directly promoted to Associate Court Clerk (see, supra, at 134-135). Third, any Senior Court Clerks at said time who held their positions as the result of said reallocation did not impinge on petitioners’ displacement rights since such are based on the original attainment of permanent status in the court system in general, not the time of appointment to Senior Court Clerk.[5]
We also find without merit petitioners’ claims of violation of Federal (42 USC) section 1983. Generally, the State and State agencies are not amenable to suit for deprivation of constitutional rights (see, Will v Michigan Dept. of State Police, 491 US 58) and, while State officials acting in their official capacities, such as here, are subject to suits for injunctive relief under said statute, such can only be prospective, not retroactive (see, supra, at 71, n 10). Thus petitioners would not be able to obtain back pay under a 1983 action, but only prospective appointment to Senior Court Clerk or reappointment to Associate Court Clerk. As to the former, we do not find O.C.A.’s failure to follow the noted State statute and State regulations to rise to the level of a deprivation of Federal constitutional rights. Specifically, we do not find the State’s failure to accord petitioners their said displacement rights a deprivation of petitioners’ property rights without due process or a denial to them of equal protection (see, US Const 14th Amend), particularly since an adequate State remedy exists and State-created rights are involved (cf., 1 Bodensteiner & Levinson, State & Local Government Civil Rights Liability § 1:14, at 117-118). Petitioners fail to cite any cases where a 1983 action has been used to enforce State civil service rights such as those claimed here.
As to the contention that the abolition of the subject Associate Court Clerk positions was disproportionate and arbitrary, petitioners do not present anything beyond conclusory allegations in this regard. Generally, the State has discretion to determine what positions should be eliminated because of budget limitations and, as long as done in good faith and not with the intent to evade the purposes of the Civil Service Law, such discretionary allocations of governmental fiscal resources *140 will not be overturned. (See, e.g., Matter of Piekielniak v Axelrod, supra, at 969.) Petitioners submitted no proof showing such bad faith and thus we find they have not met their burden on their claims of arbitrary and unreasonable abolitions. (See, Matter of Crow v Ambach, supra, and cases cited therein.) Correlatively, we do not find any constitutional violations with respect thereto. Therefore, we find petitioners have not established any cause of action under said section 1983 and concomitantly they are not entitled to any attorneys’ fees under Federal (42 USC) section 1988.
Accordingly, based on the foregoing, we find petitioners have sufficiently sustained their cause of action for displacement to Senior Court Clerk as of September 26, 1991, with appropriate back pay and benefits, but all other causes and relief sought are denied and should be dismissed. Petitioners shall settle judgment on 15 days’ notice in accordance with the findings made herein.
Further, it is, ordered that petitioners’ motions to strike the affirmative defenses of failure to state a claim on which relief could be granted in the O.C.A. and Civil Service Employees Association answers are granted and said defenses are stricken.

. Said list shows petitioner Haywood to have a permanent status date of January 12, 1987 and while she disputes this (she claims July 20, 1981 such date), at least one Senior Court Clerk has a later date (i.e., Lieselotte Garrett, July 6, 1987).

. Other than the dismissal requested by the O.C.A., Gorman and Mayerhofer respondents, no relief was requested other than that specified in the Dachenhausen petition and the amended Anderson petition. Specifically, none of the Senior Court Clerks sought any court directions and the Court Clerks are not any more adversely affected by any determination here since O.C.A.’s prior, improper actions already resulted in the displacement of the maximum of seven Court Clerks (and those displaced were temporaries — see, supra, at 134-135). Specification of the exact retreats to be effected would thus appear to be more a matter for O.C.A. in these circumstances.

. In said opinion and order, amendment was denied, inter alla, as to one Associate Court Clerk seemingly claimed to be temporary. O.C.A.’s employment records and computer printout show her to have been permanent in said title at the relevant time (cf., Rules of Chief Judge [22 NYCRR] § 25.30 [a] [1]), as well as having seniority over petitioners.

. The legislative authorization for the Court Officers arguably provided a sufficient legislative mandate for this exception to promotion by test (cf., Birkeland v State of New York, 116 Misc 2d 1, affd 98 AD2d 395, affd 64 NY2d 663), although in a subsequent memo and letter O.C.A. did indicate that an exam to procure normal permanent status might be advisable. The Anderson petitioners and other Senior Court Clerks so obtained such status, but apparently some other such Clerks did not.

. Even if such reallocated status should be considered temporary and thus subject to prior, separate demotion (see, supra, at 135), that does not affect petitioners’ rights as the displacing incumbents.